INTERSTATE COMMERCE COMMISSION v. NORTHEASTERN R. CO. OF SOUTH CAROLINA et al.

(Circuit Court of Appeals, Fourth Circuit. November 3, 1897.)

No. 178.

INTERSTATE COMMERCE COMMISSION—POWER TO FIX RATES.
    The interstate commerce commission has no power, express or implied, to fix maximum rates; and an application to the court to enforce such an order must be dismissed. 74 Fed. 70, affirmed.

Appeal from the Circuit Court of the United States for the District of South Carolina.

This was an application by the interstate commerce commission to enforce an order made by it against the Northeastern Railroad Company of South Carolina and others. The circuit court dismissed the bill, holding that the commission had no authority to make the order in question (74 Fed. 70), and the commission has appealed.

L. A. Shaver and William Perry Murphy, for appellant.

Augustine T. Smythe and George V. Massie, for appellees.

Before GOFF, Circuit Judge, and MORRIS and BRAWLEY, District Judges.

GOFF, Circuit Judge. This case is before us on an appeal from a decree entered by the circuit court of the United States for the district of South Carolina, by which decree the bill filed by the appellant, the interstate commerce commission, was dismissed. The court below based its action on the want of jurisdiction on the part of the interstate commerce commission to make the order, the enforcement

of which was the object of the bill so dismissed. Since this case was argued and submitted, the supreme court of the United States, in deciding the case of Interstate Commerce Commission v. Cincinnati, N. O. & T. P. R. Co., 167 U. S. 479, 17 Sup. Ct. 896, has so disposed of the jurisdictional question involved herein as to impel us to affirm the decree appealed from. The opinion filed in the court below by Hon. C. H. Simonton, Circuit Judge, states the facts so fully, and disposes of the questions involved so clearly, that we adopt and announce it as embodying the views of this court. It is as follows:

"This case comes up upon a motion to dismiss the bill. The Truck Farmers' Association, of Charleston, and others engaged in the same line of business, filed their complaints with the interstate commerce commission against the railroad companies named in the caption. The complaints were that the charge of freight on vegetables and other truck between Charleston and New York and other Northern markets was unreasonable, and so unlawful. The commission, having given due notice to the carriers complained of, entered into a long, laborious, and careful examination of the charges, and, after deliberation upon the voluminous testimony produced before them, filed in writing their findings of fact and their conclusions thereon. They formulated their conclusions in the following final judgment and order: 'Ordered and adjudged that the defendants [naming them], and each of them, do, within ten days after service of this order, wholly cease and desist and thenceforth abstain from charging or receiving any greater compensation in the aggregate for the transportation from Charleston, in the state of South Carolina, to Jersey City, in the state of New Jersey, of the following named and described commodities, whether shipped to New York, N. Y., and delivered to consignees at Jersey City, or shipped to Jersey City, than is hereinafter set forth as follows, to wit: (1) Six cents per quart, $1.92 per crate of 32 quarts, or $3.84 per 100 pounds, as the total charge for the transportation, including cost of refrigeration en route, and all services incident to such transportation, of strawberries from Charleston, aforesaid, to Jersey City, aforesaid. (2) Fifty-nine and one-half cents per standard barrel or barrel crate for the transportation of apples, onions, turnips, squash or cymbling, or egg plant, from Charleston, aforesaid, to Jersey City, aforesaid. (3) A rate or sum for the transportation of cabbages shipped in standard barrels or barrel crates from Charleston, aforesaid, to Jersey City, aforesaid, or New York, N. Y., which is three-fourths of the rate or sum contemporaneously charged by defendants on potatoes shipped in standard barrels or barrel crates between said points. It is further ordered that said defendants be, and they severally are hereby, required to readjust their rates for the transportation of the commodities hereinabove specified from Charleston, aforesaid, to Philadelphia, Pa., Baltimore, Md., and Washington, D. C., so as to bring them in conformity with the law when compared with rates to Jersey City or New York which will be put into effect by said defendants under the terms of this order. And it is further ordered that the report and opinion of the commission on file herein be, and is hereby, made a part of this order, and that a notice embodying this order be sent forthwith to each of the defendants, together with a copy of said report and opinion, in conformity with the provisions of the fifteenth section of the act to regulate commerce, and that a copy of said report and opinion and of this order be also served upon the Southern Railway Company, successor of the defendants the Richmond & Danville Railroad Company and F. W. Huidekoper and Reuben Foster, the receivers thereof, and upon the South Carolina & Georgia Railroad Company, successor of the defendants the South Carolina Railway Company and D. H. Chamberlain, the receiver thereof.' Thereupon the railroad companies prayed a rehearing of the matter, and, after consideration of the application and the argument in support thereof, the rehearing was denied. To the original complaints and investigation the receiver of the South Carolina Railway Company and the receivers of the Richmond & Danville Railroad Company were parties. Pending the investigation and the judgment of the commissioners, the receivers of each of these roads were discharged as such receivers. The property in their hands was sold. The South Carolina & Georgia Railroad Company became the owner of the property of the

South Carolina Railway Company, and the Southern Railway Company that of the Richmond & Danville Railroad Company. Both of these corporations, purchasers, united in and signed the petition for rehearing. The several railroad corporations having been served with the proceedings of the commission, and with its final order, judgment, and decree, the interstate commerce commission filed this bill of complaint. The bill recites, in substance, the above, and then adds: (2) That the defendants have willfully failed and neglected to obey and conform to the requirements of said interstate commerce commission as set forth in the original order of said commission,— Exhibit E hereto, as amended by said order, Exhibit G hereto (orders above quoted),—'and, by so failing and neglecting, have and do continue to violate the provisions of the act to regulate commerce at, to wit, Charleston, South Carolina, at divers other points on the lines or routes operated by them.' The prayers of the bill, among others, are as follows: (3) That this court will issue a writ of injunction, to run during the pendency of this cause, restraining the said defendants herein, and each of them, their officers, agents, or servants, from continuing in their violation and disobedience of the said orders of petitioner, and that on final hearing this court will make said injunction perpetual, or will issue such other proper process, mandatory or otherwise, as is necessary to restrain said defendants from further continuing in such violation or disobedience. (4) That this court will, if it shall think fit, make an order that, in case of any disobedience of such writ of injunction, or other proper process, mandatory or otherwise, each of the defendants guilty of such disobedience shall pay into court, or otherwise, as the court may direct, such sum of money, not exceeding the sum of $500, for every day, after a day to be named in said order, that such defendant shall fail to obey such injunction or other proper process. (5) That this court will grant such other and further relief in the premises as may seem meet and proper.

"The right of the interstate commerce commission to institute these proceedings is derived from the act of congress approved March 2, 1889 (25 Stat. 855, § 5). This is its sole authority therefor, and in its exercise it is bound by, and must confine itself within, the terms of the statute. The section reads as follows: 'Sec. 5. That section 16 of said act is hereby amended so as to read as follows: "Sec. 16. That whenever any common carrier, as defined in and subject to the provisions of this act, shall violate or refuse or neglect to obey or perform any lawful order or requirement of the commission created by this act, not founded upon a controversy requiring a trial by jury, as provided by the seventh amendment of the constitution of the United States, it shall be lawful for the commission or for any company or person interested in such order or requirement to apply in a summary way, by petition, to the circuit court of the United States, sitting in equity in the judicial district in which the common carrier complained of has its principal office, or in which the violation or disobedience of such order or requirement shall happen, alleging such violation or disobedience, as the case may be."' It will be observed that the resort to this court is in the case of the violation of, or the neglect or refusal to obey or perform, any lawful order or requirement of the commission. The defendants deny that the orders in question are lawful, and on this base the present motion. The orders of the interstate commerce commission, which they seek to enforce by these proceedings, fix the rate of transportation between Charleston and New York, on strawberries at 6 cents per quart, per crate of 32 quarts, or $3.84 per 100 pounds. They fix the rate of transportation of apples, onions, turnips, squash or cymbling, or egg plant, at 59½ cents per standard barrel or crate. They fix the rate or sum for the transportation of cabbages, in standard barrels or crates, which is three-fourths the rate or sum contemporaneously charged for potatoes shipped in standard barrels or crates, between said points. Are these lawful orders of the interstate commerce commission? Has the commission any authority in law to make such an order? The supreme court of the United States, at its present session, passed upon this question in Cincinnati, N. O. & T. P. Ry. Co. v. Interstate Commerce Commission (decided March 30, 1896) 16 Sup. Ct. 700. The Cincinnati, New Orleans & Texas Pacific Railway Company, the Western & Atlantic Railroad Company, and the Georgia Railroad Company carried freight from Cincinnati into Georgia. The through rate for transportation of less than carloads of buggies, carriages, and other first-class freight, was $1.07 per 100 pounds; and on all such freight carried to

Social Circle the charge was 30 cents more, which, however, was paid exclusively to the Georgia Railroad. Complaint was made to the interstate commerce commission. The commission examined into the matter, and issued its order, in two parts. They held that the charge of 30 cents additional to Social Circle was in conflict with the long and short haul clause, and ordered defendants to desist therefrom. And they add that the said defendants do also, from and after the 20th day of July, 1891, wholly cease and desist from charging or receiving any greater aggregate compensation for the transportation of buggies, carriages, and other first-class articles, in less than car loads, from Cincinnati aforesaid, to Atlanta, in the state of Georgia, than $1 per 100 pounds. Application was made to the circuit court of the United States for the Northern district of Georgia to enforce these orders. The court, after full hearing, declined to grant the application. Interstate Commerce Commission v. Cincinnati, N. O. & T. P. Ry. Co., 56 Fed. 925. The cause was carried by appeal to the circuit court of appeals of the Fifth circuit. 9 C. C. A. 689. That court adopted and sustained that portion of the order of the interstate commerce commission which related to the rate to Social Circle, but it disapproved and annulled that portion of the order which commanded the defendants to desist from charging for the transportation of freight of like character from Cincinnati to Atlanta more than $1 per 100 pounds. Both parties went up by appeal to the supreme court,— the railroads from so much of the judgment of the circuit court of appeals as relates to the freight charges to Social Circle, and the commission from so much of the decree as denies the relief prayed for in the charges fixed by it on freight from Cincinnati to Atlanta. The cause was elaborately and earnestly argued. The supreme court sustained the circuit court of appeals in both questions. It held that the latter part of the order of the interstate commerce commission was an attempt to fix rates between Cincinnati and Atlanta. On that point the court says: 'Whether congress intended to confer upon the interstate commerce commission the power to fix rates was mooted in the courts below, and is discussed in the briefs of counsel. We do not find any provision of the act that expressly, or by necessary implication, confers such power.' The case at bar seems to be on all fours with this case. The interstate commerce commission asks this court to enforce its orders fixing rates for truck between Charleston and New York. The court can only enforce the lawful orders of the commission. As has been seen, the commission is not warranted by the act of congress to fix rates, and to this extent its order is not lawful. The bill is dismissed."

The decree appealed from is affirmed.